[Cite as *State v. Schatzinger*, 2021-Ohio-167.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
WYANDOT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

AARON J. SCHATZINGER,

    DEFENDANT-APPELLANT.

CASE NO. 16-20-04

O P I N I O N

Appeal from Wyandot County Common Pleas Court
Trial Court No. 18-CR-0043

Judgment Affirmed

Date of Decision: January 25, 2021

APPEARANCES:

    *Howard A. Elliot* for Appellant

    *Douglas D. Rowland* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Aaron J. Schatzinger ("Schatzinger") appeals the judgment of the Wyandot County Court of Common Pleas, alleging (1) that his conviction for permitting drug abuse is not supported by sufficient evidence; (2) that his conviction for corruption of another with drugs rests on an inference upon an inference; (3) that both of his convictions are against the manifest weight of the evidence; and (4) that his conviction for corrupting another with drugs is not supported by sufficient evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On December 20, 2017, Sergeant Kevin Robison ("Sergeant Robison") of the Wyandot County Sheriff's Office was dispatched to Schatzinger's residence. Tr. 116-117. When Sergeant Robison arrived, Schatzinger indicated that his girlfriend, Candace Schatzinger ("Candace") was nonresponsive. Tr. 117. Sergeant Robison entered the residence and found Candace in her bedroom. Tr. 118. He then determined that she was deceased and had "been gone for awhile [sic]." Tr. 118. Sergeant Robison then secured the scene. Tr. 118-119.

{¶3} Sergeant Edwin G. Gottfried ("Sergeant Gottfried"), who works in the detective bureau at the Wyandot County Sheriff's Office, was notified of Candace's death at 5:45 A.M. Tr. 132, 135. Once at Schatzinger's residence, he noted that Candace "appeared to [have] be[en] in relatively good health" and suspected that

she may have died of an overdose. Tr. 139, 141. Sergeant Gottfried "sat down with [Schatzinger] * * * to try to get some basic information." Tr. 141. Sergeant Gottfried testified that Schatzinger was "crying, emotional," and "distraught * * *." Tr. 141. Schatzinger told Sergeant Gottfried that Candace "was not a [drug] user, that she would not use drugs, [and] that he did not use drugs." Tr. 141.

{¶4} During their sweep of the bedroom, the police discovered a pill that appeared to be "Xanax or Alprazolam." Tr. 140. The police also discovered a part of a green pill on the dresser in the bedroom. Tr. 140. Because Candace had what appeared to be a Xanax pill next to her bed, the police initially believed that a local drug dealer, Mark Powers ("Powers"), may have been connected to this case. Tr. 146. Powers was known to have been "using a pill press to stamp fentanyl and/or heroin to look identical to a Xanax Alprazolam pill." Tr. 146. Powers had also been linked to several overdose deaths in the area and was Schatzinger's first cousin. Tr. 145-146. Ex. 4.

{¶5} During the course of their investigation, the police also found Candace and Schatzinger's cellular phones in their bedroom. Tr. 139. After Schatzinger consented to a search of his cell phone, Sergeant Gottfried downloaded and examined its contents. Tr. 143-144. While Schatzinger had previously stated that he and Candace were not drug users, his text messages indicated that he was not only using drugs but that he was also procuring various drugs for Candace and a number of other people. Ex. 6E-G, 7. *See* Tr. 144-145. Further, Schatzinger's

phone contained multiple pictures of a white powdery substance in a bag on a scale. Ex. 5A-E, 6J. Tr. 158, 160-161, 216. When examining the content of Candace's phone, Sergeant Gottfried noted that Schatzinger was the only person who Candace "was having conversations with relevant to drugs or supplying her with pills, marijuana, and other stronger stuff, heroin * * *." Tr. 148.

{¶6} On December 21, 2017, Sergeant Gottfried sat down for an interview ("the December 21 interview") with Schatzinger. Tr. 150. During this interview, Sergeant Gottfried presented Schatzinger with copies of the pictures and text messages from his cell phone that indicated he was involved in drug trafficking. Tr. 149, 216. Schatzinger admitted that he had a drug addiction and indicated that he was using a gram to a gram and a half of heroin every couple of days. Ex. 4. When presented with the pictures from his phone of heroin on scales, he stated that he was trafficking in drugs to support his addiction and travelled out of town around two or three days a week to obtain drugs from his supplier. Ex. 4. He also admitted that he had been a "little" worried about getting some bad heroin. Ex. 4.

{¶7} During this interview, Schatzinger stated that Candace's "habit" was "not that bad." Ex. 4. He also indicated that Candace would do "a point or two at the most" of heroin periodically and that she began using heroin "only a couple of months" before her death. Ex. 4. He admitted to supplying Candace with drugs but stated that he was "not sure if she got anything else from anybody else or not." Ex. 4. Sergeant Gottfried then told Schatzinger that, based on the text messages in

Candace's phone, "[s]he didn't act like she did [get drugs from another person]. I looked through her phone. Um, * * * anytime she needed something as simple as marijuana, she was looking to you." Ex. 4. In response, Schatzinger said that he "d[id]n't know for sure" whether she got drugs from another dealer. Ex. 4.

{¶8} Since the police suspected that Powers had perhaps supplied Schatzinger with a Xanax pill that was actually made of heroin and fentanyl, Sergeant Gottfried asked a number of questions about Powers. Ex. 4. Schatzinger admitted that Powers supplied him with drugs on several occasions and was the source of the Xanax pills that he had obtained for Candace. Ex. 4. He also admitted that he was aware that the product that Powers was selling had some issues. Ex. 4. Powers had indicated that he was cutting his drugs with other substances because of several overdoses that had happened. Ex. 4. Concerned by this information, Schatzinger indicated that he sought another source for some of his drugs. Ex. 4.

{¶9} After discussing Powers, Schatzinger expressed remorse for his role in Candace's death and eventually stated that he felt responsible. Ex. 4. Schatzinger then wrote a statement the reads as follows:

> **I'm not sure if this [the Xanax pills] is what killed my girl that I love so much. I wish I knew if your pills killed my girl. I will hate you [Powers] forever.**
>
> **I would buy those off you for 5 dollars. And now my girl is gone! I know now if I could take everything back, I would. I feel absolutely horrible. And for the rest of my life I'll be hurting.**

Ex. 8. Sergeant Gottfried noted that, if the Xanax pills were not the cause of Candace's death, the heroin likely was. Ex. 4. Schatzinger then stated that he did not think that Candace was becoming an addict and thought that he was "helping her out." Ex. 4.

{¶10} While a large portion of this interview related to Schatzinger's relationship with Powers, the pills that were found in Candace's bedroom were subsequently submitted to the Ohio Bureau of Criminal Investigations ("BCI") for testing on January 9, 2018 and were found not to contain fentanyl. Tr. 194. Instead, BCI determined that these pills were "just prescription Xanax * * *." Tr. 194. For this reason, the police came to believe that these Xanax pills were not the cause of Candace's death. Tr. 194. At trial, Sergeant Gottfried stated that Powers "was eliminated in this particular incident." Tr. 187.

{¶11} Subsequently at trial, Schatzinger testified that he expressed remorse during his interview with Sergeant Gottfried because he thought, at that time, that the Xanax pills he obtained from Powers were the cause of Candace's death. Tr. 263. He further testified that he no longer felt responsible for her death because the Xanax pills found in their bedroom were not found to contain fentanyl. Tr. 262. However, Sergeant Gottfried noted at trial that, in his written statement, Schatzinger wrote that he "wish [he] knew *if* [Powers's] pills killed [Candace]." (Emphasis added.) Ex. 8. Tr. 198-199. While he admitted that there appeared to be no connection between Powers and Candace's death, Sergeant Gottfried further noted

-6-

that he discussed a wide range of illegal drugs during his interview with Schatzinger. Tr. 187, 200.

{¶12} Further, an autopsy was performed on Candace. Ex. 2. The coroner concluded that Candace "died of acute combined drug intoxication, fentanyl, heroin, and alprazolam." Ex. 2. Tr. 98. The coroner further determined that the cause of death was "Accident—substance abuse." Ex. 2. Tr. 101. The coroner's report also indicated that Candace died within minutes to hours after the administration of the drugs, though the precise time of death could not be pinpointed with certainty. Ex. 2. Tr. 101.

{¶13} On April 11, 2018, Schatzinger was indicted on one count of involuntary manslaughter in violation of R.C. 2903.04(A), a felony of the first degree; one count of corrupting another with drugs in violation of R.C. 2925.02(A)(3), a felony of the second degree; one count of possession of heroin in violation of R.C. 2925.11(A), a felony of the fifth degree; and one count of permitting drug abuse in violation of R.C. 2925.13(B), a felony of the fifth degree. Doc. 1. On September 30, 2019, the State filed a motion to dismiss the charge of possession of heroin in violation of R.C. 2925.11(A). Doc. 103.

{¶14} On October 2 and 3, 2019, Schatzinger was tried on these charges. Doc. 113. The State called Sergeant Robison, Sergeant Gottfried, and Candace's stepmother, Angela M. Bricely ("Bricely"), as witnesses. Tr. 116, 124, 132. Dr. Robert B. Forney ("Dr. Forney") also testified about the results of Candace's

autopsy. Tr. 75. A recording of the December 21 interview between Sergeant Gottfried and Schatzinger was played for the jury. Tr. 151, 17. Ex. 4. Copies of various text messages and photos from Candace and Schatzinger's phones were also introduced into evidence. Ex. 6, 7.

{¶15} At the close of the State's case-in-chief, the Defense made Crim.R. 29 motions for each of the charges against Schatzinger. Tr. 225. The trial court denied these Crim.R. 29 motions. Tr. 229. Schatzinger then testified in his own defense. Tr. 232. On October 3, 2019, the jury found Schatzinger guilty of the offense of corrupting another with drugs and the offense of permitting drug abuse. Doc. 110. However, the jury could not reach a verdict on the charge of involuntary manslaughter. Doc. 110, 113. On October 22, 2019, the trial court issued a judgment entry of sentencing. Doc. 117.

{¶16} The appellant filed his notice of appeal on May 29, 2020.[1] Doc. 143. On appeal, Schatzinger raises the following assignments of error:

### First Assignment of Error

**Permitting drug abuse in violation of Ohio Revised Code §2925.13(B) is not supported by the evidence, and that the Defendant-Appellant knowingly permitted a felony drug abuse offense to take place in his residence and as such his conviction must be vacated.**

---

[1] Schatzinger initially filed his notice of appeal on October 22, 2019. Doc. 118. However, this Court dismissed this appeal on May 18, 2020 because the charge of involuntary manslaughter had not been disposed of by that time. Doc. 140. On May 20, 2020, the State filed a motion to dismiss the charge of involuntary manslaughter. Doc. 141. The trial court found this motion well-taken, and the charge of involuntary manslaughter was dismissed on May 21, 2020. Doc. 142. Schatzinger then proceeded to file the appeal presently before this Court. Doc. 143.

**Second Assignment of Error**

**The Defendant-Appellant's conviction for corruption of another with drugs in violation of Ohio Revised Code §2925.02(A)(3), was based on an inference upon an inference as to the possession and subsequent supplying by the Defendant-Appellant, controlled substance to the decedent which resulted in her death and such conviction must be vacated.**

**Third Assignment of Error**

**That neither of the convictions herein for permitting drug abuse or corrupting another with drugs, are supported by sufficient evidence and that the manifest weight of the evidence directs, that both convictions are improper and must be vacated.**

**Fourth Assignment of Error**

**That the conviction issued herein for corrupting another with drugs, is not supported by sufficient evidence and the conviction must be vacated.**

For the sake of analytical clarity, we will consider Schatzinger's first and fourth assignments of error before we consider his second and third assignments of error.

*First Assignment of Error*

{¶17} Schatzinger argues that his conviction for permitting drug abuse is not supported by sufficient evidence.

Legal Standard

{¶18} A challenge to the sufficiency of the evidence supporting a conviction "is a question of law and a 'test of adequacy rather than credibility or weight of the evidence.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19. "The

sufficiency-of-the-evidence analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Luebrecht*, 3d Dist. Putnam No. 12-18-02, 2019-Ohio-1573, ¶ 36, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12. On appeal, the applicable standard

> **is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.).

{¶19} To prove the offense of permitting drug abuse in violation of R.C. 2925.13(B), the State must establish that the defendant "[1] is the owner, lessee, or occupant, or who has custody, control, or supervision, of premises or real estate, including vacant land" and "[2] knowingly [3] permit[ted] the premises or real estate, including vacant land, to be used for the commission of a felony drug abuse offense [4] by another person." R.C. 2925.13(B). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶20} In proving a conviction, "[i]t is a well-settled rule of law that direct evidence is not necessary for the trier of fact to make a finding; circumstantial evidence has the same probative value." *State v. Shoopman*, 3d Dist. No. 14-10-17, 2011-Ohio-2340, ¶ 35.

> **Direct evidence is 'evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.' Black's Law Dictionary (8 Ed.2004), 596. Circumstantial evidence is 'evidence based on inference and not on personal knowledge or observation.' *Id*. at 595.**

*State v. Fisher*, 3d Dist. No. 02-10-09, 2010-Ohio-5192, ¶ 26. "A conviction can be sustained based on circumstantial evidence alone." *State v. Burke*, 2020-Ohio-4781, ---N.E.3d ---, ¶ 11 (3d Dist.), quoting *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991).

Legal Analysis

{¶21} Schatzinger does not challenge the first element of this offense on appeal. *See* Appellant's Brief, 6. Instead, Schatzinger argues that the State failed to establish that Candace was committing a felony drug offense in the residence. Appellant's Brief, 8. He also argues that "there is not a reasonable basis" to believe that Schatzinger had "knowledge that the decedent was committing a felony drug offense in the home." *Id*. We will limit our analysis to the arguments that the appellant has raised on appeal.

{¶22} At trial, the State introduced a number of text messages that were exchanged between Schatzinger and Candace. Ex. 6. On October 24, 2017, the following exchange occurred:

> [Schatzinger]:  Does Steff like the white?
>
> [Candace]:  I'm not sure if she dose [sic] that any more or not. She's supposed to stop by today and pay me for those jeans I'll ask her if you want me to?
>
> [Schatzinger]:  Yeah ask I guess we have some to get rid
>
> [Candace]:  You bringing me any home wink wink wink * * *

Ex. 6-G. During the December 21 interview, Schatzinger explained that "white" referred to cocaine. Ex. 4. On November 2, 2017, the following exchange occurred:

> [Candace:]  Grab me one please. . .
>
> [Candace:]  Grab me one please. . .
>
> [Schatzinger:]  F**k o [sic] forgot everything
>
> [Candace:]  What?

Ex. 6-I. Schatzinger later explained to Sergeant Gottfried that Candace was asking him to get some Percocet for her in these texts. Ex. 4.

{¶23} On November 17, 2017, Candace and Schatzinger were texting about whether she should submit to a drug test for a job she was about to start:

> [Candace:]  She said people they're [sic] have used it and passed [the drug test]
>
> [Schatzinger:]  I would be scared to take one H,coke,pills and pot!! There [sic] bound to find something it's up too you though

-12-

Ex. 6-L. Sergeant Gottfried asked Schatzinger if this meant that he was advising Candace not to take the drug test because she would test positive for heroin, cocaine, pills, and marijuana. Ex. 4. Schatzinger replied, "probably." Ex. 4.

{¶24} In another text, Candace stated, "I've been talking [sic] stool softner. It's too late to take a laxative I'll be up all night s******g." Ex. 6-O. At the December 21 interview, Sergeant Gottfried noted that heroin causes constipation. Ex. 4. He stated that this was an indication that Candace was, by this point, using drugs fairly regularly. Ex. 4. Further, Sergeant Gottfried testified at trial that constipation is a common symptom "for someone that is taking a lot of medications and/or is on opiates." Tr. 148.

{¶25} On November 19, 2017, the following exchange occurred between Candace and Schatzinger:

**[Candace:] I'm still really tired today. * * ***

**[Schatzinger:] That stuff does that lol**

**[Candace:] I've only done one *more* since you left**

**[Schatzinger:] Oh what you found *on my dresser***

**[Candace:] Probably not sure one of the lil pieces I got from you**

(Emphasis added.) Ex. 6-M. During the December 21 interview, Sergeant Gottfried noted that this language seemed to indicate that Candace had done some drugs at home while Schatzinger was present and before he had left. Ex. 4. In response to

Gottfried's statement, Schatzinger indicated that he could not remember what drug had been on his dresser on that day.  Ex. 4.

{¶26} On December 3, 2017, Candace texted Schatzinger about what she had seen two of her children, J.J. and K.S., do earlier:

> **[Candace:]  Umm so JJ told [K.S.] that we crush pills and snort then [sic] u our nose and showed her how we do it. . . * * ***
>
> **[Candace:]  He showed her with carrots**
>
> **[Schatzinger:]  Omg I hope you had a talk with him and tell him we don't do that omg.**
>
> **[Candace:]  Auto-Reply I'm driving right now – I'll get back to you later.**
>
> **[Schatzinger:]  Make something up idk what tell her medicine for somebody that can't swallow**
>
> **[Schatzinger:]  Omg that's not good what if he does that at school**
>
> **[Schatzinger:]  *We* can't do nothing *around him* anymore**

Ex. 6-R.  During the December 21 interview, Sergeant Gottfried noted that the children appear to have seen them use heroin.  Ex. 4.  Schatzinger said, "I don't think *we* did it around the kids.  It accidentally happened, you know what I mean."  (Emphasis added.)  Ex. 4.  Sergeant Gottfried then noted that this text appeared to indicate that their children were aware of their drug usage.  Ex. 4.

{¶27} On December 4, 2017, Candace texted Schatzinger this series of requests:

> **[Candace:]  Grab me some smokes please * * ***

**[Candace:]  My back and my feet are killing me wish you could** *grab me a p* **for tomorrow * * ***

**[Candace:]  Don't forget my smokes your going to have to get them in town everything is closed * * ***

(Emphasis added.)  Ex. 6-S.

{¶28} Sergeant Gottfried also asked about another text where Candace requested a couple of grams from him.  Ex. 4.  However, Schatzinger told him that Candace was not talking about heroin and was asking for marijuana.  Ex. 4.  There was another text exchange from October where Candace reported that she "only had about a half left."  Ex. 4.  In response, Schatzinger replied, "Sweet.  Let's do it when *I get home* and I'll grab a couple and do one when I get back."  (Emphasis added.)  Ex. 4.  Schatzinger told Sergeant Gottfried that this exchange was about Percocet.  Ex. 4.

{¶29} During the December 21 interview, Schatzinger admitted that he was aware of Candace's heroin use, though he stated that her habit was "not that bad."  Ex. 4.  He stated that Candace "wasn't really like hooked on anything, but just every now and then she would try—try stuff, you know."  Ex. 4.  Sergeant Gottfried stated that, as he examined Candace's text messages, he noticed that she progressed from drugs like marijuana to harder drugs like heroin.  Ex. 4.  Tr. 148.  Schatzinger indicated that Candace had started using heroin "only a couple of months" before she died.  Ex. 4.  He also affirmed that Candace would do "a point or two at the most" when she used it.  Ex. 4.  Sergeant Gottfried noted that her text messages

confirmed that she started using heroin in late October or early November of 2017. Ex. 4. Schatzinger stated that he could not remember the last time that he saw her use drugs. Ex. 4.

{¶30} Further, Candace was found deceased in her bedroom as the result of a drug overdose. Tr. 118. Ex. 2. Dr. Forney testified that, based on the autopsy report, Candace likely died "within one to two hours max" after she ingested the fatal drug cocktail. Tr. 101. He then added that she "[p]robably [died within] less than an hour." Tr. 101. Sergeant Gottfried also recovered two straws from the bedroom that were suspected to have traces of fentanyl on them. Tr. 182. However, he testified that the straws were never tested to confirm this suspicion. Tr. 182.

{¶31} In this case, Schatzinger admitted that he knew Candace had been using heroin for one or two months before her death. Ex. 4. The text messages admitted into evidence indicate that Schatzinger also knew that Candace had been using heroin, cocaine, and Percocet. Ex. 4, 6-I, 6-L, 6-S. Further, the text messages also indicated that Candace was doing illegal drugs in her home. Ex. 6-M. During the December 21 interview, Sergeant Gottfried read a text message that indicated Schatzinger had planned to do drugs with Candace "when [he] got home." Ex. 4. Based on the text messages admitted at trial, their children also appear to have been aware of Candace and Schatzinger's use of illegal drugs. Ex. 6-R. Finally, Candace also passed away in their bedroom from a heroin and fentanyl induced overdose. Tr. 118-119. We conclude that, from the facts presented at trial, a jury could infer

that Schatzinger knew that Candace was committing a felony drug offense in his residence.

{¶32} After reviewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State had produced some evidence to substantiate the essential elements that Schatzinger has challenged on appeal. For this reason, his conviction for the crime of permitting drug abuse is not unsupported by sufficient evidence as alleged. Thus, Schatzinger's first assignment of error is overruled.

*Fourth Assignment of Error*

{¶33} Schatzinger argues that his conviction for corrupting another with drugs is not supported by sufficient evidence.

Legal Standard

{¶34} We herein reincorporate the sufficiency-of-the-evidence standard set forth under the first assignment of error. To prove the offense of corrupting another with drugs in violation of R.C. 2925.02(A)(3), the State must establish that the defendant "[1] knowingly * * * [2] [b]y any means, administer[ed] or furnish[ed] to another * * * [3] a controlled substance, and [4] thereby cause[d] serious physical harm to the other person, or cause[d] the other person to become drug dependent." R.C. 2925.02(A)(3). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

Legal Analysis

{¶35} While Schatzinger concedes that death would constitute serious physical harm, he argues that the State did not present any direct evidence that he "furnished" Candace with the fatal dosage of heroin and fentanyl that caused her death. Appellant's Brief, 17-18. However, the State could also establish this offense by proving that Schatzinger "knowingly * * * furnish[ed] a controlled substance and * * * caused [Candace] * * * to become drug dependent." R.C. 2901.22(B).

{¶36} At trial, the State introduced an abundance of evidence that established that Schatzinger supplied Candace with illegal drugs. During the December 21 interview, the following exchange occurred:

> **[Sergeant Gottfried:] Did she have a drug dealer or did she pretty much get the stuff that you brought home?**
>
> **[Schatzinger:] I'm not sure if she got anything else from anybody else or not.**
>
> **[Sergeant Gottfried:] She doesn't act like she did. I looked through her phone. Um, did not see anytime she needed something as simple as marijuana she was looking to you. Does that sound pretty accurate?**
>
> **[Schatzinger:] I don't know for sure. I can't say one hundred percent.**

Ex. 4. Schatzinger further admitted that he supplied Candace with illegal drugs, ranging from marijuana to Percocet. Ex. 4. He also admitted to obtaining Xanax from Powers at Candace's request. Ex. 4, 7.

{¶37} However, Sergeant Gottfried testified that he had reviewed Candace's text messages and that Schatzinger was the only person from whom she requested illegal drugs. Tr. 148. At trial, he stated the following:

> **[I]nitially we looked at different avenues. We had heard one individual was possibly supplying Aaron Schatzinger and Candace, which was a Travis Danner, who we are familiar with. So I looked in [Candace's] phone for conversations with Travis Danner, along with numerous other conversation threads she had still currently on her cell phone. And I did not observe any real drug content that would suggest getting drugs from any of those individuals, until I came to the thread with Aaron Schatzinger.**

Tr. 147. He further testified that the police investigation did not uncover any other people who supplied Candace with drugs. Tr. 173. At various points, the texts between Candace and Schatzinger mention heroin, cocaine, Percocet, and marijuana. Ex. 6-E, 6-G, 6-I, 6-K, 6-L, 6-P, 6-S. She specifically asked Schatzinger for Percocet and marijuana in these text messages. Ex. 6.

{¶38} Further, the text messages at trial indicate that Schatzinger was trafficking in heroin. Ex. 5, 6, 7. He had multiple pictures on his phone of heroin on scales. Ex. 4, 5. Tr. 216. Schatzinger told Sergeant Gottfried that he was trafficking in drugs primarily to support his heroin addiction. Ex. 4. He further admitted that he was using one to one and a half grams of heroin every couple of days. Ex. 4. He indicated that each gram of heroin cost him $100.00 to $120.00. Ex. 4. For this reason, he stated that he was not making much money from selling heroin to others. Ex. 4. Tr. 256.

{¶39} During the December 21 interview, Schatzinger admitted that he was a "little" concerned about getting some bad heroin in the process of trafficking these drugs. Ex. 4. The prosecution also introduced several text messages from several people who had purchased heroin from Schatzinger. Ex. 7. One of these contacts informed Schatzinger the product he sold caused him to "fade out bad." Ex. 7. Another contact reported that the product was "burning [his] nose bad." Ex. 7. Schatzinger told Sergeant Gottfried that, if he could go back, he would not have sold these drugs to people. Ex. 4.

{¶40} However, after receiving texts indicating that the drugs he was selling were too strong, he received texts from his contacts with reports the drugs he was trafficking were not strong enough. Ex. 7. Schatzinger was, at this time, obtaining drugs from Powers. Ex. 4. He texted Powers about this issue. Ex. 7. Powers replied the drugs were not as strong because he was cutting them "because all the ods." Ex. 7. During the December 17 interview, Schatzinger stated that this concerned him and that he began to get drugs from other sources. Ex. 4. *See* Tr. 222. However, Schatzinger still obtained the Xanax for Candace from Powers even though he was aware that Powers was selling dangerous substances that had caused overdoses. Ex. 4, 8. Tr. 221-222.

{¶41} During the December 21 interview, Schatzinger stated that he did not think that Candace was becoming an addict and that he believed that he was helping her out by providing her with these drugs. Ex. 4. At trial, Sergeant Gottfried

testified about the progression of Candace's drug usage based on the text messages on her phone.  Tr. 148.

> **[Sergeant Gottfried:]  It was a long history of text messages dating back several months of conversations between Aaron Schatzinger and Candace Schatzinger.  And through those conversations, it was very evident to me, whose dealt with the epidemic, and dealt with numerous drug investigations, that there was a process where an individual who was drug dependent.  It's not an immediate thing.  It's almost a gradual process, where someone may start with pills, and then get deeper into pills, maybe stronger pills, and then moving to heroin, and then stronger heroin.  It was almost a process that we could see of a telling tale of the last few months of Candace Schatzinger's life, which started out with getting marijuana, getting pills, moving towards heroin, stronger heroin, doing more, needing it, becoming constipated \* \* \* which is also commonly—for someone that is taking a lot of medications and/or is on opiates.  So once we saw this, I started to see where the only person that she was having conversations with relevant to drugs or supplying her with pills, marijuana, and other stronger stuff, heroin, was Aaron Schatzinger.  If she needed something, her conversation thread indicated that she was contacting him, Aaron Schatzinger, to get her this.**

Tr. 147-148.  Sergeant Gottfried had also explained to Schatzinger that the constipation referred to in the text messages would indicate that Candace was engaging in more regular heroin use by the middle of November.  Ex. 4, 6.

{¶42} At trial, Bricely testified that Candace lost weight in the months before she died.  Tr. 129.  She also testified that Candace had become more withdrawn over time and less social.  Tr. 128.  Bricely stated that she was unaware that Candace had been using illegal drugs.  Tr. 131.  However, she testified that the family had planned

to have an intervention after Christmas in 2017 because they were concerned about Candace and wanted to find out what was happening with her.  Tr. 129.

{¶43} During the December 21 interview, Schatzinger indicated that Candace had progressed to heroin one or two months before her death.  Ex. 4. Sergeant Gottfried noted that this statement was consistent with the text messages. Ex. 4.  Schatzinger affirmed that Candace was using about "a point or two" but that her habit was not as bad as his had been.  Ex. 4.  He stated that he could not remember the last time that he saw her using heroin.  Ex. 4.  Schatzinger also indicated that Candace began losing weight before she started using the harder drugs.  Ex. 4.

{¶44} In this case, the State provided evidence that Schatzinger furnished Candace with a variety of controlled substances over an extended period of time. Further, the prosecution provided evidence that Candace became progressively more dependent on stronger and stronger drugs, moving from marijuana to pills to heroin over the course of several months.  Ex. 4, 6.  Tr. 148.  After reviewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could conclude that Schatzinger committed the offense of corrupting another with drugs.  Since the State provided some evidence for each of the essential elements of this crime, this conviction is supported by sufficient evidence.  Thus, Schatzinger's fourth assignment of error is overruled.

*Second Assignment of Error*

**{¶45}** Schatzinger argues that his conviction for corrupting another with drugs is based upon an inference upon an inference.

Legal Standard

**{¶46}** "An inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury." *State v. Palmer*, 80 Ohio St.3d 543, 561, 687 N.E.2d 685, 701-702 (1997), quoting *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 130 N.E.2d 820 (1955), paragraphs one of the syllabus. However, "a given state of facts may give rise to two or more inferences, and in such case one inference is not built upon another but each is drawn separately from the same facts." *State v. Cassidy*, 10th Dist. Franklin No. 88AP-1054, 1990 WL 20083, *6 (Mar. 6, 1990), quoting *McDougall v. Glenn Cartage Co.*, 169 Ohio St. 522, 160 N.E.2d 266 (1959), paragraph two of the syllabus. Thus, "a trier of fact may draw multiple inferences from the same set of facts." *State v. Jordan*, 3d Dist. Seneca Nos. 13-01-25, 13-01-26, and 13-01-27, 2002 WL 479160, *2 (Mar. 2002).

Legal Analysis

**{¶47}** Schatzinger argues that his conviction for corrupting another with drugs is based on an impermissible inference on an inference. Specifically, he asserts that the jury inferred that he had possession of the fatal heroin compound

and that he furnished this compound to Candace. However, the State did not have to establish that Schatzinger furnished Candace with the fatal dosage of heroin in order to prove that he committed the offense of corrupting another with drugs. The State could also establish a conviction for this offense by proving that he caused Candace to become drug dependent. R.C. 2925.02(A)(3).

**{¶48}** At trial, the State introduced evidence that established that Schatzinger was an addict who regularly used heroin; that Schatzinger was trafficking in heroin to support his habit; that Schatzinger had seen Candace use heroin, though he could not recall the last occasion that he saw her ingest this drug; that Schatzinger had supplied Candace with the controlled substances she had requested from him over an extended period of time; and that Schatzinger had procured marijuana, Percocet, and Xanax for her. Ex. 4, 6. From these facts, a jury could infer that Schatzinger had also furnished Candace with heroin. This conclusion did not require the jury to make an inference on an inference.

**{¶49}** Further, the State also introduced evidence that established that Schatzinger supplied Candace with various types of drugs over an extended period of time; that Candace progressed from marijuana to pills to harder drugs, such as heroin, during this timeframe; that Candace had only progressed to heroin a few months before she died; and that Candace had a heroin "habit," though her habit was not as bad as Schatzinger's habit. Ex. 4, 6. Tr. 148. From these facts a jury could infer that Schatzinger had, by furnishing her these various kinds of controlled

substances, caused her to form a drug dependency that progressed over time from marijuana to pills to heroin. Tr. 148.

**{¶50}** These conclusions do require inferences. However, these conclusions do not require inferences upon inferences. From the evidence introduced at trial, a jury could make permissible inferences that support a conviction for corrupting another with drugs. For this reason, Schatzinger's second assignment of error is overruled.

*Third Assignment of Error*

**{¶51}** Schatzinger argues that his convictions for permitting drug abuse and corrupting another with drugs are against the manifest weight of the evidence.

Legal Standard

**{¶52}** In a manifest weight analysis, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *Plott, supra*, at ¶ 73. Thus, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'**

*State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

**{¶53}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist. 1995). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis for Permitting Drug Abuse

**{¶54}** We reincorporate the evidence that we examined under the first assignment of error and turn now to examining the evidence presented at trial for its weight and credibility. On cross-examination, Sergeant Gottfried admitted that Schatzinger did not admit that he gave Candace fentanyl. Tr. 217. He also admitted that, while the text messages clearly referred to drug usage, the type of drugs being used was not always clear. Tr. 212-213. Sergeant Gottfried also testified that the

police did not recover any other pills from Schatzinger's residence besides the Xanax. Tr. 216.

{¶55} In this case, Schatzinger testified in his own defense. Tr. 230. He testified that, on the night of December 19, 2017, he went to bed at 9:30 P.M. and that Candace was awake at that time, "getting ready for * * * bed herself." Tr. 233-234. He stated that he woke up at 5:40 A.M. and noticed that Candace was not in the bed next to him. Tr. 234-235. He began looking for Candace and discovered her on the floor next to their bed. Tr. 237.

{¶56} Schatzinger admitted that he, at that time, was addicted to opiates and used opiates almost everyday. Tr. 241-242, 251. He further indicated that he was abusing Percocet and had used heroin as late as December 20, 2017. Tr. 243. According to his testimony, he was also trafficking drugs to support his addiction and sold drugs to his close friends in this process. Tr. 247, 256. Schatzinger also stated that Candace was an addict. Tr. 245. He testified that Candace began using opiates to address the pain of a toothache that she had. Tr. 245. However, he also stated that, "like anybody knows about opiates, they take ahold of you real fast." Tr. 245.

{¶57} On cross-examination, Schatzinger affirmed that both he and Candace were addicts, though he admitted his addiction was worse. Tr. 260-261. He stated that he was aware that Candace was using heroin. Tr. 260-261. However, he stated that her heroin use "was something very recent * * *." Tr. 261. He stated that he

did not know she was using heroin on the night of her death. Tr. 261. Schatzinger also admitted that he did procure marijuana for Candace at her request and that he procured Xanax for her on one occasion. Tr. 258, 262-264.

{¶58} After considering the evidence presented at trial on the basis of its weight and credibility, we conclude that the evidence does not weigh heavily against Schatzinger's conviction for permitting drug abuse. Further, having considered the evidence in the record, we find no indication that the jury lost its way and returned a conviction against the manifest weight of the evidence. Thus, we find these arguments to be without merit.

Legal Analysis for Corrupting Another with Drugs

{¶59} On the morning of Candace's death, Schatzinger told the police that he and Candace were not drug users. Tr. 141. However, he later admitted that he was a heroin addict; that he trafficked heroin; and that Candace was a drug addict. Ex. 4. Tr. 245. Schatzinger testified that he did procure Percocet for Candace at her request. Tr. 245. He stated that they did not have insurance and that he got these pills for Candace to help relieve some pain she had from a tooth ache. Tr. 245. He further testified that Candace had asked him for opiates but that he refused to give them to her. Tr. 248.

{¶60} At trial, Schatzinger admitted that he supplied heroin to his close friends and did not dispute that Candace died from a lethal combination of fentanyl and heroin. Tr. 257. However, he disputed that he was the source of the drugs that

ended Candace's life and stated that he would not "provide her" with these drugs. Tr. 257, 261, 266. He testified that he did not give any drugs to Candace on December 19, 2017. Tr. 248. When asked whether he had access to fentanyl, Schatzinger stated that he did not know "where fentanyl comes from." Tr. 260. He further testified that he had "no clue" how Candace got fentanyl. Tr. 248, 266. Schatzinger also testified that he was "distraught" during the December 21 interview with Sergeant Gottfried, in part, because he was under the impression that the Xanax from Powers was fentanyl. Tr. 244.

{¶61} On cross-examination, Schatzinger did admit that he would get drugs for Candace at her request. Tr. 264. He stated that he "mainly" got marijuana for her and that he got her Xanax "one time." Tr. 264. However, he admitted that he did not know what was in the Xanax that he procured and assumed that "it was a regular Xanax." Tr. 265. He further admitted that it was dangerous to procure and distribute drugs without knowing what they contained. Tr. 265.

{¶62} After considering the evidence presented at trial on the basis of its weight and credibility, we conclude that the evidence does not weigh heavily against Schatzinger's conviction for corrupting another with drugs. Further, having considered the evidence in the record, we find no indication that the jury lost its way and returned a conviction against the manifest weight of the evidence. Thus, Schatzinger's third assignment of error is overruled.

*Conclusion*

**{¶63}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Wyandot County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**PRESTON and ZIMMERMAN, J.J., concur.**

**/hls**